UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS, GREER C. JANIS,
MICHAEL I. JANIS, AND JONATHAN N. JANIS,

        Plaintiffs,

v.                         Case No.: 8:09-CV-02308-RAL-MAP

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

        Defendants.

_____/

## AFFIDAVIT OF KASSIM TAJIDEEN

1. My name is Kassim Tajideen, and I am personally familiar with the contents of this affidavit.

2. I am unequivocally opposed to terrorism and other acts of political violence.

3. I am unequivocally opposed to narcotics trafficking and related criminal enterprises.

4. I would never knowingly participate in or support acts of terrorism or other acts of political violence, narcotics trafficking, or other related criminal enterprises.

5. I am a businessman and have been wrongly sanctioned for improper dealings with Hizballah.

6. I have petitioned OFAC to remove such sanctions by demonstrating that there is no factual or legal basis for my designation as a supporter of Hizballah.

7. I am in the process of seeking such delisting by OFAC to remove my name and those of my companies from its sanctions list of supporters of Hizballah.

1

8. I am the owner-in-fact of, and I exercise sole control over, both Grupo Arosfran Empreendimentos E Participacoes SARL ("Grupo Arosfran") and Ovlas Trading SA ("Ovlas Trading"). Accordingly, I can affirm the following facts on behalf of myself, Grupo Arosfran, and Ovlas Trading.

9. Grupo Arosfran and Ovlas Trading are not agencies, instrumentalities, divisions, front companies, networks, predecessors, subordinates, derivatives, or successor organizations of Hizballah or the FARC.

10. I have no relationship with Hizballah or the Revolutionary Armed Forces of Colombia ("FARC"), the Colombian drug cartel.

11. I am not an agent of Hizballah or the FARC.

12. I am not an instrumentality of Hizballah or the FARC.

13. I do not support Hizballah or the FARC.

14. I am not a member or affiliate of Hizballah or the FARC.

15. I do not and have never knowingly provided financial or technological material assistance or support for or to Hizballah or the FARC.

16. I do not and have never knowingly provide{d} goods or services in support of the international narcotics trafficking activities of Hizballah or the FARC.

17. I do not and have never knowingly provide{d} goods or services in support of any other specially designated narcotics trafficker designated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC").

18. I am not and have never been owned, controlled, or directed by, Hizballah or the FARC.

19. I am not and have never been owned, controlled, or directed by any other specially designated narcotics trafficker designated by OFAC.

2

20. I do not and have never knowingly act{ed} for or on behalf of Hizballah or the FARC.

21. I do not and have never knowingly act{ed} for or on behalf of any other specially designated narcotics trafficker designated by OFAC.

22. I do not and have never knowingly play{ed} any role – much less a significant role – in international narcotics trafficking related to coca paste or cocaine manufactured or supplied by Hizballah or the FARC.

23. I do not and have never knowingly play{ed} any role – much less a significant role – in international narcotics trafficking related to coca paste or cocaine manufactured or supplied by any other specially designated narcotics trafficker designated by OFAC.

24. I do not supply, and have never knowingly supplied, currency, weapons, ammunition, logistics, transportation, or supplies, nor financial or money laundering services, to Hizballah or the FARC or its trafficking partners, direct or indirectly, as consideration for FARC coca paste or cocaine.

25. I am not and have never knowingly been involved with the financial or money laundering network of a drug cartel.

26. I am not and have never knowingly been involved with any organization that has supplied currency, weapons, ammunition, logistics, transportation, or supplies, or financial or money laundering services to Hizballah or the FARC or its trafficking partners, directly or indirectly, as consideration for FARC coca paste or cocaine.

27. I do not and have never knowingly assist{ed} or provide{d} financial or technological support for or to, or provide{d} goods or services in support of, or act{ed} on behalf of the international narcotics trafficking activities of Hizballah or the FARC.

28. I do not and have never knowingly assist{ed} or provide{d} financial or technological support for or to, or provide{d} goods or services in support of, or act{ed} on behalf of the international narcotics trafficking activities of any other specially designated narcotics trafficking designated by OFAC.

29. I was born on March 21, 1955. In the late 1970s I immigrated to Sierra Leone, where I married my wife and had four children. In 1976 I began my first business in Africa: retail sales of foodstuffs such as chickens, beans, and rice, which I purchased locally and sold to consumers.

30. Over time, the business expanded to wholesale purchasing, importing foodstuffs and other consumer goods, and resale to consumers. In the late 1980s, I began transferring ownership and full control over my business in Sierra Leone to my brother, Jaffar Tajideen, and moved to Belgium.

31. In Belgium, I continued to expand my business by establishing relationships with European and U.S. suppliers from whom I would buy in bulk and export or otherwise sell to companies in West and Central Africa. By the mid-1990s, my business had expanded into Angola, where I founded Grupo Arosfran.

32. Eventually, Grupo Arosfran imported, distributed, and resold goods in Angola, and my business in Africa grew to include broader manufacturing, distribution, and resale operations.

33. I established a purchasing platform in Lebanon, Ovlas Trading, to take advantage of economies of scale. Ovlas Trading would purchase large amounts of goods from mostly Western suppliers and then sell to Africa, to my African businesses and other customers.

34. I understand that the Plaintiffs in this lawsuit have sought and obtained writs garnishing assets held by Grupo Arosfran, Ovlas Trading, and me (in my personal capacity) in the United States which have been blocked by OFAC.

35. I further understand that the Plaintiffs seek an order awarding those assets to Plaintiffs in satisfaction of a judgment previously obtained by the Plaintiffs against the FARC.

36. Prior to the Plaintiffs' efforts in this lawsuit, I am unaware of any allegation purporting to connect me, Grupo Arosfran or Ovlas Trading to the FARC in any way.

37. On May 27, 2009, OFAC designated me as a Specially Designated Global Terrorists pursuant to Executive Order 13224 because of alleged connections to Hizballah.

38. On December 9, 2010, OFAC designated Grupo Arosfran and Ovlas Trading as Specially Designated Global Terrorists.

39. I have never knowingly supported Hizballah or the FARC, either in my personal capacity or through any corporate entity I control.

40. I have sought to avoid unnecessary entanglements with Hizballah despite the challenges of doing so while conducting business in Lebanon.

41. Since OFAC's designation of me and my companies, I have dedicated considerable time and resources in an effort to determine what (if anything) could have formed the basis of that designation, so that I could take immediate remedial action.

42. Since OFAC's designation, I have adopted comprehensive remedial measures that directly address deficiencies that previously existed in financial and compliance controls at my companies. These include controls around four key areas: corporate governance, cash management, financial management, and screening/due diligence. These are designed to effectively mitigate the risks that anyone at any of my companies might make

unauthorized and improper financial payments to Hizballah or any other terrorist organizations.

43. I have also undertaken a large-scale re-organization and consolidation of my business operations in order to simplify those operations and further reduce risk.

44. Among other things, this process resulted in the winding down of Ovlas Trading and Grupo Arosfran, which as a result no longer have any ongoing commercial activity, but have not been formally dissolved only because they hold the property or interests in property that are the subject of this proceeding.

45. One frequent point of confusion relating to my designation is my relationship with my brothers Ali and Husayn Tajideen, and the existence of multiple companies known as "Tajco." Both of my brothers have been designated by OFAC pursuant to Executive Order 13224.

46. I previously owned and controlled a company in Sierra Leone called Tajco Ltd. One of my brothers, Ali Tajideen, owned and controlled a company called "Tajco SARL" that operated in Lebanon. My other brother, Husayn Tajideen, owned and controlled a third company, Tajco Ltd., in The Gambia.

47. These three entities were independent businesses and operationally distinct. Despite this, I am aware of numerous published reports erroneously conflating the different "Tajco" companies.

48. OFAC has also erroneously conflated these separate Tajco entities. OFAC's December 9, 2010 press release referred to me and my brother Ali Tajideen as "business partners and co-owners of Tajco SARL, operating as Tajco Company LLC in Tyre, Lebanon, with Ali Tajideen serving as the managing partner." I believe that this description of my

6

involvement with Tajco SARL stems from my previous listing as a shareholder of that company (until 2010). However, past links between me and my brother Ali were limited to matters of corporate formality, *i.e.*, it was common practice for me and my brother to use family members and close friends as nominal shareholders and/or corporate officers of our respective companies, even when such individuals played no active role in those companies. This was done to adhere to Lebanese corporate law, which would require that a company have multiple shareholders in order to incorporate. Despite my nominal shareholding, neither I nor my brother Ali played any managerial or supervisory role in any of the other's business affairs.

49. Although my importing and exporting businesses have, in the past, engaged in commercial dealings with Tajco Ltd. in The Gambia, such dealings have ceased and – in any case – never, to the best of my knowledge and belief, involved any provision of support to either Hizballah or to the FARC.


I declare and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. 1746.


_____    11, 5, 2015
Kassim Tajideen, Affiant

7